**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bruce M. FREY, Defendant–Appellant.**

No. 00–1579.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 22, 2001 *.

Decided March 1, 2001.

Before BAUER, CUDAHY, POSNER, Circuit Judges.

### ORDER

A jury found Indiana attorney Bruce Frey guilty of attempted extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, based on a scheme in which he and Thomas Hubbard convinced James Lambert—a firearms dealer facing felony charges—to pay them to "buy" a plea bargain that would allow Lambert to avoid felony convictions and thereby continue to run his firearms business. Frey appeals, and we affirm.

James Lambert and his wife jointly owned and operated a hunting and fishing equipment store in Grant County, Indiana, using a federal firearms dealer's license issued in both their names. The mainstay of their business was firearms sales, and Lambert handled these himself because his wife knew very little about firearms.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Lambert's wife called police to their home in January 1994 when Lambert attempted suicide, and Lambert was arrested after struggling with police officers over a gun. The officers found drugs on Lambert, and he later was charged with four felonies: two counts of criminal recklessness and two counts of possessing a controlled substance.

In February or March 1995, shortly after his release from jail pending trial, Lambert spotted Bruce Frey, whom he knew to be an attorney, shopping at Lambert's store. Although Lambert was counseled at that point, the best plea offer his retained attorney had been able to secure would have required Lambert to plead to a felony, which Lambert knew would affect his ability to operate his business. *See* 18 U.S.C. §§ 922(a)(1) (prohibiting dealing in firearms without a license), 922(g)(1) (prohibiting possession of firearm by convicted felon), 923(d)(1) (prohibiting issuance of dealer's license to companies controlled, directly or indirectly, by convicted felons). *See also Casanova Guns, Inc. v. Connally,* 454 F.2d 1320 (7th Cir.1972) (per curiam) (affirming denial of dealer's license to newly formed corporation based on its relationship with existing corporation that had pleaded guilty to felony charge; corporations had unity of interest between officers and shareholders and closely integrated business operations, and assets of new corporation consisted solely of firearms inventory purchased from existing corporation). Lambert asked Frey to help with his case, and Frey returned to the store several days later saying he had "checked in" with the prosecutor's office and would be able to "do something" about the charges. Local prosecutors, Frey told Lambert, believed Lambert had escaped prosecution for a number of past crimes, and accordingly demanded $20,000 in exchange for a favorable disposition of the pending charges. Frey stressed to Lambert "over and over" the importance of avoiding felony convictions, saying "you don't want to lose your license; you've got too much to lose." Frey also said that he did not want to be "visible," so the two would use a mutual acquaintance, Thomas Hubbard, as a go-between to "handle the details." Frey further advised Lambert not to sign any plea agreement without Frey's approval and not to tell his attorney of record, David Payne, about Frey's involvement.

Months later, in early December 1994, Lambert told Payne about Frey's offer. Payne contacted the Indiana State Police and arranged for Lambert to cooperate in an investigation into public corruption by recording all his conversations with Frey and Hubbard. Under the direction of the police, Lambert met and spoke with Frey and Hubbard several times throughout the following months, making a series of payments totaling $20,000. Police then recruited Frey to help with the investigation, but Frey was uncooperative and no link between either him or Hubbard and the prosecutor's office was ever established. Meanwhile, the deputy prosecutor reevaluated his case against Lambert. Lambert eventually entered a misdemeanor plea agreement (unaided by Frey and Hubbard), and Frey and Hubbard were charged with attempted extortion. Hubbard pleaded guilty, and a jury convicted Frey after hearing the tapes of his and Hubbard's conversations with Lambert.

■ Frey's arguments on appeal, though framed as both sufficiency-of-the-evidence and constitutional challenges, boil down to a contention that this court has incorrectly interpreted the Hobbs Act. Frey insists, relying on cases from other circuits, that the Act requires that the victim fear a harm caused directly by the extortioner. He goes on to assert that

because he never "threatened" Lambert and because Lambert lacked independent corroboration of Frey's purported ties to the prosecutor's office, any fear Lambert had of Frey was unreasonable. In Frey's view, Lambert behaved more like a shrewd opportunist than an extortion victim. Our cases make clear, however, that in a case of extortion by wrongful use of fear of economic harm, the victim's fear need not be created by the extortioner. *See United States v. Lisinski,* 728 F.2d 887, 891 (7th Cir.1984). The victim's fear can be preexisting, *id.* at 890–92; the extortioner need only exploit that fear, *id.; United States v. Knox,* 68 F.3d 990, 996 (7th Cir.1995). To the extent that Frey believes the Second .Circuit has interpreted the Act more narrowly, we are unpersuaded by his suggestion that we adopted that court's view when we summarized its holding in *United States v. Capo,* 817 F.2d 947 (2d Cir.1987) (en banc), in a parenthetical within our own opinion in *Sutherland v. O'Malley,* 882 F.2d 1196, 1202 (7th Cir.1989). *Sutherland* in no way endorses Frey's contention that the extortioner must cause his victim's fear of economic harm; indeed *Sutherland* cites approvingly to *Lisinski,* in which we stated that "it is unnecessary for the government to prove that [the extortioner] actually created the fear in the minds of his victims." *See id.; Lisinski,* 728 F.2d at 891.

Here, there was sufficient evidence for a reasonable jury to find the required elements beyond a reasonable doubt. Lambert's testimony that at the time of his arrest he was "extremely" aware of the impact a felony conviction would have on his firearms business, and his testimony that "[b]asically, [a felony conviction] would have shut my business down," is sufficient evidence that he reasonably feared economic harm. *See, e.g., Lisinski,* 728 F.2d at 891 (victim's fear that loss of liquor license would put his restaurant out

of business was sufficient to sustain extortion conviction). Lambert's testimony that Frey stressed repeatedly the importance of avoiding such a conviction, in turn, constitutes sufficient evidence that Frey exploited Lambert's fear. *See id.*

Accordingly, the judgment of the district court is AFFIRMED.